*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GOLDA D. HARRIS, | : |
| Plaintiff, | : Civil Action No. 13-3806 (PGS) |
| v. | : OPINION |
| VALERIE ARTHUR, et al., | : |
| Defendants. | : |

**SHERIDAN**, District Judge

This is a civil action filed by Plaintiff Golda Harris ("Plaintiff") pursuant to 42 U.S.C. § 1983. The Court dismissed Plaintiff's Complaint on October 21, 2014 for failure to state a claim. (ECF Nos. 6, 7.) Plaintiff thereafter filed an Amended Complaint (ECF No. 8.) The Court must now review the Amended Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit. For the reasons set forth below, the Amended Complaint will be permitted to proceed in part.

**I. BACKGROUND**

Plaintiff, a prisoner currently confined at Edna Mahon Correctional Facility ("EMCF") in Clinton, New Jersey, brings this civil rights action, pursuant to 42 U.S.C. § 1983, against Defendants Valerie Arthur, Administrator at EMCF; Helen Adams, Assistant Superintendent at EMCF; Gary Lanigan, Commissioner of the Department of Corrections; "Special Administrative Segregation Review Committee"; "Parole Board"; "Prison Classification Committee"; "Institutional Classification Committee"; D. Hunter and Tina Moreo-Corteo, Hearing Officers.

The following factual allegations are taken from the Amended Complaint and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of Plaintiff's allegations.[1]

As against Defendant Arthur, Plaintiff alleges that she was held in administrative segregation for 68 days, during which she was not provided any handicap accommodations, including a bathroom, cane and bedding. (Am. Compl. ¶ 5(b).) Plaintiff also alleges that she was denied showers and forced to stay in a "feces smeared cell" during that time. (*Id.*) Plaintiff further alleges that Defendant Arthur denied Plaintiff "ad seg" pay, while at the same time providing payment to white "ad seg" inmates. (*Id.*) Plaintiff further alleges that Defendant Arthur refused to respond to her grievances.[2] (*Id.*)

With regard to Defendant Adams, Plaintiff alleges that she "approved excessive ad. seg. and detention." (*Id.*) Plaintiff further alleges that she allowed Plaintiff to have her legal property while in administrative segregation, but then denied Plaintiff "ILA" access. (*Id.*) With regard to Defendant Lanigan, Plaintiff alleges that he ignored grievances that she filed and he failed to ensure

---

[1] The Court notes that Plaintiff's 52-page Amended Complaint, and accompanying 406 pages of exhibits, contain many facts, written in a stream-of-consciousness manner, many of which are conclusory and seemingly unrelated to the crux of Plaintiff's claims. The Court identifies and addresses Plaintiff's claims to the best of its ability.

[2] Plaintiff also alleges that Defendant Arthur "denied [her] ILA...failed to review the excess ad-seg sanctions; false imprisonment...theft of [Plaintiff's] judgment checks...failed to stop wrongdoing by her staff and custody; abuse [sic] her discretion where the code or laws do not give her discretion...ignored letter order from Hon. Douglas E. Arpert, U.S.D.J. to provide mental health services/referrals; had knowledge of this wrongdoing and failed to act; did not adhere to ICC/SASRC and hearing officers recommendations; retaliated against [Plaintiff] by allowing the illegal acts to continue against [Plaintiff] causing [Plaintiff] to be victimized by custody staff who physically assaulted [Plaintiff] and threw away [her] legal and personal property; ignored the medical report of the prisoner therapist to provide cane for prolong standing and distance; negligence, etc." However, as discussed in the Court's October 21st Opinion and Order, these bare allegations, with no further information, are insufficient to state a claim under *Iqbal*.

his staff was knowledgeable. (*Id.*) Plaintiff further alleges that he violated the current "Terhune agreement provisions for reviewing and accessing the needs of inmates to determine placement in c-cottage, past mental health diagnosis, medical issues and the adverse affects [sic] of harsh and atypical hardships of prison life..." (*Id.*)

With regard to Defendants "Special Administrative Segregation Review Committee," "Parole Board," "Prison Classification Committee" and "Institutional Classification Committee," Plaintiff alleges that they "did not adhere to the prisoner policy and procedures. Created illegal prison rules to intentionally and/or negligently circumvent the code and statutes, thereby violating [Plaintiff's] prison rights..." (*Id.*) Plaintiff further alleges that these defendants "created a record of violence in [her] name to falsely imprison [her] in ad. seg. for over: 9000 days." (*Id.*) Plaintiff further alleges that this was done to retaliate against her for bringing a lawsuit against them and that these defendants were grossly negligent. (*Id.*) As against Defendants D. Hunter and Tina Moreo-Cortes, Plaintiff alleges that they "gave [her] excessive sanctions; were biased against [her] by stating in their reasons for the sanctions that the officers were credible; [and] did not have the required substantial evidence for their finding of guilt." (*Id.*)

Plaintiff is seeking the following: "(1) jury trial guaranteed by the Constitution, U.S. to have a fair trial and relief and to remove adverse decisions by the court; (2) permanent injunction for use of cane in cell and out of cell, except for suicide watch; (3) removal from admin. segreg.; (4) state pay and interest from 7/2012 to present; (5) restoration of commutation time from excessive sanctions for 2012 to 2013; (6) punitive and nominal damages, cost of suit, restitution, and compensation for damages and intentional infliction of emotional distress." (Am. Compl. ¶ 9.)

## II. DISCUSSION

### A. Legal Standard

#### 1. Standards for a Sua Sponte Dismissal

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915 and 1915A because Plaintiff is an indigent prisoner.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim[3], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[3] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 42 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

2. **Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

**B. Analysis**

1. **Conditions of Confinement**

"The Eighth Amendment's prohibition on 'cruel and unusual punishment' ... imposes on [prison officials] a duty to provide 'humane conditions of confinement.'" *Betts v. New Castle Youth Dev.*, 621 F.3d 249, 256 (3d Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). That is, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517,

526–27 (1984)). For an alleged deprivation to rise to the level of an Eighth Amendment violation, it must "result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* at 835 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1982)).

To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Counterman v. Warren Cnty. Corr. Fac.*, 176 F. App'x 234, 238 (3d Cir. 2006). The objective component requires that the deprivation sustained by a prisoner be sufficiently serious because only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. *See Hudson v. McMillian*, 503 U.S. 1, 9, (1992). A plaintiff may satisfy the objective component of a conditions of confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. *See Rhodes*, 452 U.S. at 347–48. However, while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons." *Rhodes*, 452 U.S. at 349. To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses against society. *See id.* at 347.

The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm. *See Farmer v. Brennan*, 511 U.S. at 835 (1994); *Wilson*, 501 U.S. at 303. This component may be fulfilled by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." *Ingalls v. Florio*, 968 F.Supp. 193, 198 (D.N.J. 1997).

Here, Plaintiff alleges that Defendant Arthur held her in administrative segregation for 68

days, during which she was not provided any handicap accommodations, including a bathroom, cane and bedding. (Am. Compl. ¶5(b).) Plaintiff also alleges that she was denied showers and forced to stay in a "feces smeared cell" during that time. (*Id.*) Plaintiff alleges that she filed several grievances with Defendant Arthur alerting her to these conditions, but to nothing was done to address the situation. Taking these allegations as true, at this screening stage, the Court finds that Plaintiff has stated sufficient facts to allow the Eighth Amendment conditions of confinement claim to proceed as against Defendant Arthur.[4]

### 2. Disciplinary Hearings

It appears that Plaintiff is alleging a claim against Defendant Adams, "Special Administrative Segregation Review Committee," "Parole Board," "Prison Classification Committee," "Institutional Classification Committee," D. Hunter and Tina Moreo-Cortes, challenging her various disciplinary hearings which resulted in several sanctions, including the loss of commutation credits.

In *Heck v. Humphrey*, 512 U.S. 477, 483, (1994), the Supreme Court confirmed that a prisoner's claim for damages that calls into question the lawfulness of his conviction or confinement is not cognizable under § 1983. The Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. If it would, the

---

[4] Plaintiff also alleges a claim against Defendant Arthur for failing to respond to her grievances. (Am. Compl. ¶ 4.2.) It is well established that "[p]risoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create any federal constitutional rights." *Wilson v. Horn*, 971 F.Supp. 943, 947 (E.D.Pa. 1997). Moreover, a failure to respond to an inmate's grievances "does not violate his rights to due process and is not actionable." *Stringer v. Bureau of Prisons*, 145 F. App'x 751, 753 (3d Cir. 2005) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 ((7th Cir. 1996)). Therefore, this claim will be dismissed.

complaint must be dismissed unless the plaintiff "can demonstrate that the conviction or sentence has already been invalidated." *Id.* In *Edwards v. Balisok*, 520 U.S. 641, 643 (1997), the Supreme Court addressed the related issue of "whether a claim for damages and declaratory relief brought by a state prisoner challenging the validity of the procedures used to deprive him of good-time credits is cognizable under § 1983." The Court held that in cases where "the nature of the challenge to the procedures could be such as necessarily to imply the invalidity of the judgment," such claim is not cognizable under § 1983. *Id.* The Court held that the inmate's claim in *Balisok* was not cognizable under § 1983 because the serious procedural defects of which he complained "would, if established, necessarily imply the invalidity of the deprivation of his good-time credits." *Id.* at 646.

Here, Plaintiff's allegations are difficult to decipher. To the best the Court can determine, it appears that disciplinary charges were brought against her at different times. Defendants "conspired" to "create a record of violence in [her] name to falsely imprison [her] in ad. seg." and failed to follow policy and procedures. Similar to the prisoner in *Balisok*, if the allegations Plaintiff makes here are found to be true, it would necessarily imply the invalidity of the loss of commutation credits which was imposed as a sanction. Therefore, any claims Plaintiff makes challenging her disciplinary hearings are dismissed without prejudice.

3. **Access to the Courts**

The right of access to the courts derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments.[5] The right of access to the courts

---

[5] The right of access to the courts is an aspect of the First Amendment right to petition. *McDonald v. Smith*, 472 U.S. 479, 482, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985); *Bill Johnson's Rests. v. NLRB*, 461 U.S. 731, 741, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983). Also, "[t]he constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional

requires that "adequate, effective, and meaningful" access be provided to inmates wishing to challenge their criminal charge, conviction, or conditions of confinement. *Bounds v. Smith*, 430 U.S. 817, 822 (1977). Officials must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts." *Id.* at 825.

*Bounds* held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828. But the right of access to the courts is not unlimited. "The tools [that *Bounds*] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis v. Casey*, 518 U.S. 343, 355 (1996).

Moreover, a prisoner alleging a violation of the right of access must show that officials caused previous or imminent "actual injury" by hindering efforts to pursue such a claim or defense. *See Lewis*, 518 U.S. at 348-51, 354-55; *Oliver v. Fauver*, 118 F.3d 175, 177-78 (3d Cir. 1997). "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." *Lewis*, 518 U.S. at 351.

---

rights." *Procunier v. Martinez*, 416 U.S. 396, 419, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), overruled on other grounds, *Thornburgh v. Abbott*, 490 U.S. 401, 413-14, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989).

a.  **Defendant Adams**

Plaintiff alleges only that Defendant Adams "allowed [Plaintiff to have] her legal property on detention, but then denied ILA access." (Am. Compl. ¶ 5.) Plaintiff does not provide any further information. It is unclear whether she had law library access, but did not have paralegal assistance. Nor is it clear what claims Plaintiff was attempting to perfect when she was denied paralegal assistance. Finally, Plaintiff fails to allege any "actual injury" that she sustained as a result of Defendant Adams' denial of inmate paralegal assistance while she was "on detention." *See Lewis*, 518 U.S. at 348-51, 354-55. Therefore, this claim will be dismissed without prejudice.

b.  **Unnamed Defendants**

Plaintiff also asserts a violation of her First Amendment rights when, on February 5, 2013, she was denied writing supplies, phone calls to "the social worker," legal telephone calls and legal supplies and forms. (Am. Compl. ¶ 5.18.) Specifically, she alleges that she was denied the minimum ten hours per week in the law library. (*Id.*) She states that this directly affected another one of her cases before this Court, Civil Action No. 11-1321, which had been dismissed for failure to comply with discovery requests. (*Id.*)

Plaintiff does not provide enough information under *Iqbal* to allow this claim to proceed. She does not identify who denied her writing supplies, phone calls to "the social worker," legal telephone calls and legal supplies and forms. Nor does she identify how the denial of phone calls to her social worker and other unidentified "legal calls" had an effect on her ability to litigate the other matter pending before this Court. Moreover, it appears from the allegations in the Amended Complaint that Plaintiff was only denied her writing supplies, phone calls to "the social worker," legal telephone calls and legal supplies and forms for one day, February 5th. Finally, though Plaintiff alleges that she has suffered "actual injury" due to the denial of these items, the Court

notes that in Civil Action No. 11-1321, the Court of Appeals recently remanded the case to this Court pursuant to a request and concession by the defendants. *See Harris v. Lanigan*, Civil Action No. 11-1321, ECF No. 64.)

Based on the foregoing, the claim for denial of access to the courts against unnamed Defendants is dismissed without prejudice.

### 4. Denial of "Ad-Seg" Pay

Plaintiff alleges that Defendant Arthur discriminated against her by "paying other white ad. seg. inmates and denying [Plaintiff] ad. seg. payment on handicap idle status, and refused to provide [Plaintiff] with the statutory authority which eliminated ad. seg. pay; had no authority to stop [her] idle status pay." (Am. Compl. ¶ 4.2.)

This claim must be dismissed pursuant to *Iqbal* for failure to provide sufficient factual matter. Based on the allegations contained in the Amended Complaint, the Court cannot discern the meaning of "ad seg. payment on handicap idle status." Moreover, it is unclear why Plaintiff is alleging that she would be entitled to payment for being held in administrative segregation. This claim will be dismissed without prejudice.

### 5. Commissioner Lanigan

### a. Supervisory Claim

Plaintiff alleges that Commissioner Lanigan knows of the acts and violations against Plaintiff and failed to take action.

Courts do not recognize § 1983 liability on a theory of *respondeat superior*; instead, a plaintiff is required to allege that the defendant, through defendant's own actions, violated the Constitution. *See Iqbal*, 129 S.Ct. at 1948; *see also Jordan v. Cicchi*, 428 F. App'x 195, 198–99 (3d Cir. 2011) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). The Third

Circuit has identified two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates: (1) "liability may attach if they, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm"; or (2) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiffs rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (internal citations and quotations omitted). "Failure to" claims-failure to train, failure to discipline or failure to supervise-are generally considered a subcategory of policy or practice liability. *Id.* at 316-17.

To hold an official liable on a claim for failure to supervise based on a policy or practice, a plaintiff "must identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Barkes*, 766 F.3d at 317; *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).

Here, Plaintiff only generally alleges that Commissioner Lanigan failed to ensure his staff was knowledgeable and trained. She provides no facts with regard to specific policies and procedures. Therefore, to the extent Plaintiff intended to raise a claim against Commissioner Lanigan for failure to supervise, that claim will be dismissed without prejudice.

**b. Non-Supervisory Claim**

Plaintiff also alleges that Defendant Lanigan violated the current "Terhune agreement provisions for reviewing and accessing the needs of inmates to determine placement in c-cottage,

past mental health diagnosis, medical issues and the adverse affects [sic] of harsh and atypical hardships of prison life..." (Am. Compl. ¶ 4.3.)

This claim must be dismissed pursuant to *Iqbal* for failure to provide sufficient factual matter. Based on the allegations contained in the Amended Complaint, the Court cannot identify the meaning of the "Terhune Agreement" or what requirements it allegedly imposes on Defendant Lanigan. This claim will be dismissed without prejudice.

### III. CONCLUSION

For the reasons stated above, Plaintiff's conditions of confinement claim against Defendant Arthur will be permitted to proceed. All other claims will be dismissed without prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[6] If Plaintiff wishes to address the deficiencies identified herein, she must file a motion to amend the complaint which complies with all relevant rules. An appropriate order follows.

Dated:

                                                      Peter G. Sheridan, U.S.D.J.

---

[6] The Court notes that Plaintiff also appears to raise a claim for a "conspiracy to cover-up medical evidence." (Am. Compl. ¶ 5.1.) Though Plaintiff provides a substantial amount of information, she fails to allege sufficient facts to state a claim for conspiracy. In order to sufficiently allege a claim of a civil rights conspiracy, the complaint must specifically set forth: (1) the conduct that violated the plaintiff's rights; (2) the time and the place of the conduct; and (3) the identity of the officials responsible for the conduct. *See Oatess v. Sobolevitch*, 914 F.2d 428, 431 n. 8 (3d Cir. 1990) (citing *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 666 (3d Cir.1988)). Furthermore, the allegations of conspiracy must be grounded firmly in facts; they cannot be conclusory nor can they hinge on bare suspicions and foundationless speculation. *See Young v. Kann*, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991) (affirming dismissal of conspiracy claims based upon mere suspicion and speculation). Here, Plaintiff does not state any facts which would indicate a conspiracy among the Defendants. Rather, it appears to all be independent conduct by various officials. (Am. Compl. ¶ 5.1.) As such, any intended conspiracy claim will be also dismissed without prejudice.